**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| |
|---|
| JP MORGAN CHASE BANK, N.A., |
| Plaintiff, |
| v. |
| SCOTTSDALE INSURANCE COMPANY, |
| Defendant. |

Civil Action No. 17-2797 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon the parties' cross motions for summary judgment. (ECF Nos. 35, 36.) On July 12, 2018, Defendant Scottsdale Insurance Company ("Scottsdale") moved for summary judgment. (ECF No. 35.) Plaintiff JP Morgan Chase Bank, N.A. ("JPMC") opposed (ECF No. 38), and Scottsdale replied (ECF No. 43). On July 13, 2018, JPMC moved for summary judgment. (ECF No. 36.) Scottsdale opposed (ECF No. 37), and JPMC replied (ECF No. 42). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Scottsdale's motion is granted, and JPMC's motion is denied.

**I.    Background**[1]

The instant matter arises from a dispute between JPMC and Scottsdale regarding whether Scottsdale owed coverage to Rapid Abstract, LLC ("Rapid") for liabilities arising out of a lawsuit

---

[1] JPMC and Scottsdale each submitted the same stipulated statement of undisputed material facts. (*See* Stipulation of Undisputed Material Facts ("Stip. SUMF") ECF Nos. 35-2, 36-3.) The Court's

filed by JPMC against Rapid and other defendants in the Superior Court of New Jersey, Law Division, Monmouth County and captioned *JPMorgan Chase Bank, N.A. v. Hawthorne Capital Corp., et al.*, Docket Number MON-L-4617-10 (the "Underlying Action"). (Stip. SUMF ¶¶ 2,13.) In the Underlying Action, JPMC sought to recover losses it suffered as a result of a criminal enterprise in which Silvano Tropeano, Frederick Tropeano, John Kosta, and Krista Selig, through Hawthorne Capital, diverted funds provided by JPMC instead of applying the funds to refinance certain home mortgages. (JPMC SUMF ¶¶ 4, 5.) Rapid provided title services to Hawthorne Capital through New Jersey Title Insurance Company ("NJ Title"). (JPMC SUMF ¶ 3.) Lisa Palermo is the President of Rapid. (JPMC SUMF ¶ 1.)

Scottsdale issued Policy No. EKS3024670 (the "Rapid Policy") to Rapid and Rapid Abstract Agency, LLC ("Rapid Agency") and the coverage period was September 15, 2010 to September 15, 2011. (Stip. SUMF ¶ 1; *see* Ex. A. at SCP0001, ECF No. 35-4 ("Rapid Policy").) The Insurance Clause in the Rapid Policy obligates Scottsdale to:

> [P]ay the **Loss** which the **Insureds** have become legally obligated to pay by reason of a **Claim** first made against any **Insureds** during the **Policy Period**, or, if elected, the **Discovery Period**, and reported to the **Insurer** pursuant to Section E.1. herein, for a **Wrongful Act** taking place on or after the **Retroactive Date** and prior to the end of the **Policy Period**.

(Rapid Policy at SCP0010 (emphasis in original).)[2] The Rapid Policy defines "Insureds" to include Rapid, Rapid Abstract, "all natural persons who were, now are, or shall become partners, officers,

---

recitation of facts primarily draws from these stipulated facts. JPMC submitted a separate Statement of Undisputed Material Facts. (JPMC's Statement of Undisputed Material Facts ("JPMC SUMF"), ECF No. 36-6.) Scottsdale did not furnish a responsive statement of material facts addressing the JPMC SUMF. (*See* Def.'s Opp'n Br., ECF No. 37.) Pursuant to Local Civil Rule 56.1(a), the facts contained within the JPMC SUMF are deemed undisputed for resolution of the instant motions.

[2] The Rapid Policy identifies defined terms in bold and the Court adopts that formatting. For the parties' convenience, the Court uses the Bates Numbers of the documents submitted as exhibits to the SUMF.

2

directors, managers, member managers, or employees of the **Company**, . . . but only for **Professional Services** which were rendered, or which should have been rendered, by or for [Rapid or Rapid Agency,]" and certain independent contractors. (*Id.*) A "Claim" is "a written demand against the **Insureds** for monetary damages; or . . . a civil judicial, administrative, regulatory or arbitration proceeding against the **Insureds** seeking monetary damages, commenced by the service of a complaint or similar pleading, including any appeal therefrom." (*Id.*) Subject to certain identified exclusions, a "**Loss**" is "monetary damages, settlements and **Costs, Charges and Expenses** incurred by any of the **Insureds**." (*Id.* at SCP0011.) A "**Wrongful Act**" is "any actual or alleged error, misstatement, misleading statement, omission or neglect or breach of duty by any **Insureds**, which occurs solely in connection with the **Insureds** rendering of, or actual or alleged failure to render, **Professional Services**." (*Id.*) Section E.1. (the "Notice Provision") provides:

> The **Insureds** shall, as a condition precedent to their rights to payment under this Coverage Section only, give **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than sixty (60) days after the expiration of the **Policy Period**.

(*Id.* at SCP0013-14.)

On September 16, 2010, Chase filed the Underlying Action, and Palermo and Rapid were served with the summons and complaint six-days later. (Stip. SUMF ¶¶ 2, 3.) The complaint alleged the following causes of action against Palermo, Rapid, and NJ Title: Fraud; Tortious Interference with Contract, violations of N.J.S.A. 2C:41-2 ("NJRICO"); Civil Conspiracy; Liability based on Respondeat Superior; Negligent Misrepresentation; and Breach of Contract. (*See* Ex. B, ECF No. 35-5.)

On January 20, 2011, Palermo sent an e-mail message to Rapid's Insurance agent, IPA Risk Management, requesting cancellation of the coverage for Rapid under the Rapid Policy. (Stip. SUMF ¶ 4; Ex. D, ECF No. 35-7 (stating "as of Friday please cancel my insurance with IPA

3

for Rapid Abstract, LLC only [for] the NJ side I will still be doing NY").) Scottsdale issued Endorsement No. 11 to the Rapid Policy cancelling Rapid's coverage as of January 21, 2011. (Stip. SUMF ¶ 5.) Enforcement No. 11 amended Section C., the Exclusions section of the Rapid Policy, so that it reads, "**Insurer** shall not be liable for **Loss** under this Coverage Section on account of any **Claim** : . . . alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequences of, or in any way involving Rapid Abstract, LLC. (Rapid Policy at SCP0011, SCP0026.) The Rapid Policy was cancelled effective March 14, 2011 at 12:01 a.m. (*Id.* at SCP0027.)

On May 4, 2011, Rapid and Palermo provided Scottsdale written notice of, and sought coverage for, the Underlying Action.[3] (Stip. SUMF ¶ 7.) On May 26, 2011, Scottsdale denied coverage to Rapid and Palermo for the Underlying Action. (Stip. SUMF ¶ 8.) In the correspondence denying coverage (the "Denial Letter"), Scottsdale cited Endorsement No. 11, an exclusion for claims involving fraud, and other provisions of the Rapid Policy. (*See* Ex. G, ECF No. 35-10.)

On November 19, 2012, JPMC filed a Second Amended Complaint in the Underlying Action asserting the following causes of action against Palermo, Rapid, and NJ Title: Breach of Contract; Fraud; Tortious Interference with Contract; violations of NJRICO; Civil Conspiracy; Liability based on Respondeat Superior; and several counts of Negligence. (*See* Ex. I., ECF No. 35-12.) On December 14, 2015, Rapid and JPMC settled the Underlying Action by executing a settlement agreement (the "Settlement Agreement"). (*See* Ex. J, ECF No. 36-3.) JPMC agreed

---

[3] JPMC's Statement of Undisputed Material Facts states, "Rapid asserts that it provided Scottsdale with verbal notice of the claim in September 2010 proximate to the date it was served with the Complaint." (JPMC SUMF ¶ 9.) JPMC cites to Palermo's deposition testimony in support of this fact. (*Id.*)

4

to reduce its claim of damages from $3,000,000 to $1,600,000 and Rapid agreed to entry of a Consent Final Judgment against it in the amount of $1,600,000. (*Id.* at 2.) JPMC also agreed to not "execute on the Consent Judgment as long as [Rapid] remains financially unable to satisfy a significant part of the Consent Judgment." (*Id.* at 3.) Rapid agreed to assign to JPMC "any and all claims [Rapid] now has or in the future may have against Scottsdale Insurance Company . . . ." (*Id.*) On January 5, 2016, a consent judgment against Rapid for $1,600,000 was entered in the Underlying Action. (Ex. K ("Consent Judgment"), ECF No. 35-13.)

On March 3, 2017, JPMC filed suit against Scottsdale in the Superior Court of New Jersey, Law Division, Somerset County seeking a declaratory judgment against Scottsdale. (Ex. 1, ECF No. 1.) On April 24, 2017, Scottsdale removed the matter to this Court. (Notice of Removal, ECF No. 1.) On July 12, 2018, Scottsdale moved for summary judgment (Def.'s Mot. for Summ. J., ECF No. 35), and the next day JPMC moved for summary judgment (Pl.'s Mot. for Summ. J., ECF No. 36).

## II. Legal Standard

Summary judgment is appropriate if the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A material fact—a fact "that might affect the outcome of the suit under governing law," *Anderson*, 477 U.S. at 248— raises a "genuine" dispute if "a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248). To determine whether a genuine dispute of material fact exists, the Court must consider all facts and reasonable inferences in a light most favorable to the non-movant. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court will not "weigh the evidence and determine the

truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249.

The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Thereafter, the nonmoving party creates a "genuine [dispute] of material fact if it has provided sufficient evidence to allow a jury to find [for him] at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001). "When ruling on cross-motions for summary judgment, the court must consider the motions independently, and view the evidence on each motion in the light most favorable to the party opposing the motion." *Einhorn v. Kaleck Bros.*, 713 F. Supp. 2d 417, 421 (D.N.J. 2010).

### III. The Parties' Positions

Here, the parties submitted stipulated undisputed material facts. JPMC, however, also submitted a Statement of Undisputed Material Facts stating that "Rapid asserts that it provided Scottsdale with verbal notice of the claim [in the Underlying Action] in September 2010 proximate to the date it was served with the Complaint." (JPMC SUMF ¶ 9.) Local Civil Rule 56.1(a) deems "any material fact not disputed . . . undisputed for purposes of the summary judgment motion." Accordingly, JPMC's SUMF is deemed undisputed for purposes of the instant motion.

"Failure to dispute a party's statement of material facts, however, 'is not alone a sufficient basis for the entry of a summary judgment.'" *Easterling v. U.S. Dep't of Educ.*, No. 15-1367, 2016 WL 8674610, at *4 (D.N.J. Dec. 23, 2016) (quoting *Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990)). Federal Rule of Civil Procedure 56 requires the Court to assess whether a party is entitled to summary judgment even where a party fails to address another party's statement of undisputed material facts. Fed. R. Civ. P. 56(e)(3) (providing, in part, "If a party fails to properly support an assertion of fact or fails to properly address another party's

6

assertion of fact as required by Rule 56(c), the court may: . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . .")). The Court, accordingly, addresses the merits of the parties' arguments.

### A. Scottsdale's Motion for Summary Judgment

Scottsdale asserts that it is entitled to summary judgment based on two independent grounds. (Def.'s Moving Br. 1, ECF No. 35-1.) First, Scottsdale argues that Endorsement No. 11 precludes Rapid from obtaining coverage for the Underlying Action, and as a result JPMC is precluded from recovering the $1,600,000 in the Consent Judgment. (*Id.* at 9-10.) Scottsdale insists that Endorsement No. 11 is unambiguous and the phrase "arising out of," as interpreted by New Jersey courts, is broad enough to "exclude coverage for any claims 'originating from[,]' 'growing out of[,]' or 'having a substantial nexus with' Rapid." (*Id.* at 9 (quoting *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1010 (N.J. 1998).) Scottsdale avers that the phrase "in any way involving" is even broader and is sufficient to cover Rapid's involvement in the Underlying Action. (*Id.*) Thus, per Scottsdale, the plain and unambiguous language of Endorsement No. 11 precludes Rapid from entitlement to coverage under the Rapid Policy for the Underlying Action and Scottsdale has no obligation to satisfy the Consent Judgment. (*Id.* at 9-10.)

Second, Scottsdale asserts that it is entitled to summary judgment because Rapid breached the Notice Provision. (*Id.* at 11.) Scottsdale avers that when the Insurance Clause and the Notice Provision are read together, coverage under the Rapid Policy is triggered only when (1) the claim is "made against Rapid during the Policy period," and (2) "the Underlying Action [is] reported, in writing, to Scottsdale 'as soon as practicable' *and* no later than 60 days after the expiration of the policy period, which was March 14, 2011." (*Id.* at 11-12 (emphasis in original).) Thus, Scottsdale interprets the Notice Provision to contain two elements requiring Rapid to report the Underlying

Action (1) "in writing to Scottsdale no later than 60 days after the end of the Policy Period" and (2) "in writing 'as soon as practicable.'" (*Id.* at 12.) Scottsdale concedes that the first element is satisfied because Rapid notified Scottsdale regarding the Monmouth County action on May 4, 2011—51 days after the expiration of the policy. (*Id.* at 15.)

Scottsdale asserts, however, that Rapid did not notify Scottsdale "as soon as practicable." (*Id.*) Scottsdale asserts that New Jersey courts strictly enforce notice provisions in claims made policies. (*Id.* (citing *Zuckerman v. Nat'l Union Fire Ins. Co.*, 495 A.2d 395, 406 (N.J. 1985)).) Scottsdale argues that in *Templo Fuente De Vida Corp. v. National Union Fire Insurance. Co.* (*Templo Fuente*), 129 A.2d 1069 (N.J. 2016), the New Jersey Supreme Court held that an insurer that issued a claims made policy does not have to demonstrate appreciable prejudice from the insured's failure to comply with the notice provision of a policy to deny coverage under the policy. (*Id.* at 13-15.) Scottsdale argues that the facts and language in the Notice Provision here are similar to those in *Templo Fuente*, and thus the Court should find that Rapid breached the "as soon as practicable" requirement in the Notice Provision. (*Id.* at 15.)

### B.    JPMC's Motion for Summary Judgment

JPMC asserts that Scottsdale erred when it denied Rapid coverage and Scottsdale must now pay the Consent Judgment. (Pl.'s Moving Br. 8-9, ECF No. 36-1.) In support of this position, JPMC advances several interrelated arguments focused on the grounds for denial articulated in the Denial Letter. (*Id.* at 8-9.) JPMC argues that the complaints in the Underlying Action contained claims against Rapid within the scope of the Insurance Clause and timely notice was provided to Scottsdale, as acknowledged in the Denial Letter. (*Id.* at 10.) JPMC contends that in the Denial Letter, Scottsdale did not assert that notice of the action was untimely. (*Id.*) JPMC argues that Endorsement No. 11 does not bar coverage for the Underlying Action because it "reflects the

insured's desire to discontinue professional services coverage from January 21, 2011 going forward." (*Id.*)

JPMC cites to *Zuckerman*, for the proposition that "[a] 'claims made' policy covers claims made during the term of the policy." (*Id.* at 11.) JPMC argues that the Rapid Policy is a "hybrid between a claims made and an occurrence policy as it restricts coverage to wrongful acts which occurred while it was the insurer." (*Id.*) JPMC insists that the "subject claim is a covered claim either way." (*Id.*)

Next, JPMC asserts that a denial of coverage based on a criminal activity exclusion is "legally and factually unsustainable." (*Id.*) JPMC argues that the criminal activity exclusion required a final judgment and "Rapid was never indicted, charged or prosecuted[,]" and Rapid's "acts were negligent, not criminal or fraudulent." (*Id.*) JPMC, thus, contends that Scottsdale breached its duty to defend Rapid by relying on this exclusion. (*Id.*) JPMC also argues that Scottsdale's reliance on the extraordinary damages provisions was a breach because that provision only "acts to limit the exposure to the Policy amount and not to preclude coverage[,]" and when the Denial Letter "was issued, no monetary judgment had been entered that would provide a basis for the limitation to apply." (*Id.* at 12.)

JPMC's final argument is that Scottsdale breached its duty to indemnify Rapid. (*Id.*) JPMC argues that an insured party may settle claims against it and relieve itself of liability when the insured's insurer wrongfully declines to defend the insured. (*Id.*) JPMC insists that pursuant to *Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982), the amount of the settlement is objectively reasonable. (*Id.* at 12-13.)

## IV. Legal Standard

Interpreting an insurance contract is a legal question to be resolved by the Court. *Rena, Inc. v. Brien*, 708 A.2d 747, 756 (N.J. Super. Ct. App. Div. 1998). "In attempting to discern the

9

meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008). "If the language is clear, that is the end of the inquiry." *Id.* "If the plain language of the policy is unambiguous," the Court should "not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Templo Fuente*, 129 A.3d at 1075 (quoting *Chubb Custom Ins. Co.*, 948 A.2d at 1289) (internal citations omitted)). However, "it is a well-established principle that insurance contracts will not be enforced if they violate public policy . . . ." *Sparks v. St. Paul Ins. Co.*, 495 A.2d 406, 411 (N.J. 1985) (citations omitted). New Jersey precedent allows "the reasonable expectations of the insured to override the plain meaning of a policy in exceptional circumstances." *Colliers Lanard & Axilbund v. Lloyds of London*, 458 F.3d 231, 236-7 (3d Cir. 2006).

A provision in an insurance policy that "is subject to more than one reasonable interpretation . . . is ambiguous." *Templo Fuente*, 129 A.3d at 1075. The New Jersey Supreme Court has advised "that '[w]here the policy language [of an insurance policy] supports two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied." *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001) (quoting *Lundy v. Aetna Cas. & Sur. Co.*, 458 A.2d 106, 111 (N.J. 1983)). This approach, however, is limited to instances where "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Id.* (citations omitted). "When construing an ambiguous clause in an insurance policy, courts should consider whether clearer draftsmanship by the insurer 'would have put the matter beyond reasonable question.'" *Id.* (quoting *Doto v. Russo*, 659 A.2d 1371, 1377 (N.J. 1995)).

"Claims made" policies and "occurrence" policies are distinguished by the type of peril they insure against. Under a "claims made" policy, "it is the making of the claim which is the event and peril being insured and, *subject to policy language*, regardless of when the occurrence took place." *Templo Fuente*, 129 A.3d at 1076 (quoting *Zuckerman*, 496 A.2d at 398) (emphasis in original). Under an "occurrence policy," on the other hand, "it is the occurrence of the peril that is insured, and so long as that peril occurred during the life of the policy, coverage attaches." *Id.* at 1075.

The reporting requirements in "claims made" and "occurrence" policies have "distinctive roles," which inform New Jersey courts' interpretations of the policies. *Id.* at 1077. Specifically, "'[c]laims made' policies commonly require that the claim be made and reported within the policy period," and "tend to have an additional 'notice of claim' provision 'phrased in terms of the insured notifying the insurer of a claim or potential claim "promptly" or the like[.]'" *Id.* (quoting 13 Couch on Insurance 3d § 186:13 (2009)). Thus, "the event that invokes coverage under a 'claims made' policy is transmittal of notice of the claim to the insurance carrier." *Id.* (citing *Zuckerman*, 495 A.2d at 406. "[A]n extension of the notice period in a 'claims made' policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *Zuckerman*, 495 A.2d at 406. Such an expansion is "inequitable and unjustified." *Id.* On the other hand, "the requirement of notice in an occurrence policy is subsidiary to the event that invokes coverage, and the conditions related to giving notice should be liberally and practically construed." *Id.*

V. **Analysis**

The Rapid Policy is a "claims made" policy. The Insurance Clause obligates Scottsdale to pay for any claim (1) first made during the policy period and (2) reported to Scottsdale pursuant to the Notice Provision prior to the end of the Policy Period. (Rapid Policy at SCP0010.) This

11

provision is typical of a "claims made" policy as described by the New Jersey Supreme Court in *Zuckerman* and more recently in *Templo Fuente*. JPMC argues that the Rapid Policy is a "hybrid policy" because it "restricts coverage to wrongful acts which occurred while it was the insurer." (Pl.'s Moving Br. 11.) This interpretation of the Rapid Policy, however, is at odds with the language of the Insuring Clause which obligates Scottsdale to pay for any claim made during the Policy Period without regard to when the events resulting in the claim occurred. Moreover, Palermo testified that Rapid was established in 2006 and JPMC asserts that the Rapid Policy "had been previously renewed annually since 2006." (Ex L. 35:16-17, ECF No. 35-14 ("Palermo Deposition Transcript"); JPMC SUMF ¶ 2.) JPMC has presented no evidence, nor even alleged, that Rapid secured an insurance policy other than the policy issued by Scottsdale. Accordingly, Scottsdale's claim that the Rapid Policy limits coverage to the period of time when Scottsdale was Rapid's insurer is an attempt to recast the fact that Scottsdale insured Rapid since Rapid was first created as an entity. The Court, accordingly, finds that the Rapid Policy is a "claims made" policy.

### A. Rapid's Notice to Scottsdale was Timely

Scottsdale argues that the Notice Provision requires that Rapid report the claim (1) "in writing to Scottsdale no later than 60 days after the end of the Policy Period" and (2) "in writing 'as soon as practicable.'" (Scottsdale's Moving Br. 12.) Scottsdale relies on the New Jersey Supreme Court's holding in *Templo Fuente* to treat the phrase "as soon as practicable" in the Notice Provision as a separate element which must be satisfied. (*Id.* at 13-14.) JPMC argues that Scottsdale's reliance on *Templo Fuente* is misplaced because of "critical differences" between the notice provisions in *Templo Fuente* and the Notice Provision in this matter. (JPMC's Opp'n Br. 1-3.) JPMC argues that the requirements of the notice provision in *Templo Fuente* were in the conjunctive, required the insured to notify the insurer, "as soon as practicable *and* either ... during the Policy Period or ... within 30 days after the end of the Policy Period." (*Id.* at 1-2 (quoting

12

*Templo Fuente*, 129 A.3d at 1072).) In JPMC's view, the Notice Provision is disjunctive and the use of a "but" results in the Notice Provision "defin[ing] reasonable notice as notice within 60 days of termination." (*Id.* at 2.)

The Court finds JPMC's argument persuasive because it follows persuasive authority interpreting similarly structured notice provisions. In *Templo Fuente*, the New Jersey Supreme Court considered whether "in order to disclaim coverage, an insurance company must show it was prejudiced by an insured's failure to comply with the notice provision in a Directors and Officers 'claims made' policy." 129 A.3d at 1071. As a condition precedent to coverage, the notice provision required the insured party to:

> give written notice to the Insurer of any Claim made against an Insured *as soon as practicable* <u>and</u> either: (1) anytime during the Policy Period or during the Discovery Period (if applicable); or (2) within 30 days after the end of the Policy or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

*Id.* at 1072 (emphasis added). During oral argument before the New Jersey Supreme Court, the *Templo Fuente* plaintiffs conceded that notice to the insurer was not given "as soon as practicable" and that the plaintiffs had not provided the trial court with any evidence explaining the delay in reporting. *Id.* at 1079. The New Jersey Supreme Court held that, based on the record before it, the insured party's "unexplained six-month delay did not satisfy the policy's notice requirement." *Id.* The New Jersey Supreme Court, however, neither interpreted the notice provision, nor did it determine that the "as soon as practicable requirement" was a separate element requiring satisfaction before the notice provision was complied with. *Id.* Simply put, the construction of the notice provision and whether the "as soon as practicable" requirement was a separate element was not before the New Jersey Supreme Court in *Templo Fuente*. Thus, Scottsdale's reliance on *Templo Fuente* to establish that a "as soon as practicable" requirement is a separate element in a notice provision like the one at issue in this matter is misplaced.

13

When other courts have interpreted notice provisions worded similar to the Notice Provision here, they interpreted the clause following "as soon as practicable" as defining "as soon as practicable," and did not interpret "as soon as practicable" clause as an independent element of the notice provision. For example, in *Gazis v. Miller*, the notice provision required that "[the insured] shall give written notice to the Company *as soon as practicable but no more than 120 days after receiving notice* of any event which . . . may give rise to a covered loss irrespective of any apparent liability, when the event results in any of the following" of a number of identified options. *Gazis v. Miller (Gazis I)*, 874 A.2d 591, 593 (N.J. Super. App. Div. 2005), *aff'd*, *Gazis v. Miller (Gazis II)*, 892 A.2d 1277 (N.J. 2006) (emphasis added). The New Jersey Appellate Division and the New Jersey Supreme Court both interpreted the notice provision such that the 120-day requirement defined the "as soon as practicable" requirement. *Gazis I*, 874 A.2d at 596 (stating that "the 120 day notice requirement must be treated in the same way as a notice requirement that speaks in more general terms."); *Gazis II*, 892 A.2d at 1282 (stating that the insurer "had to have demonstrated that its 120 day notice provision was material to the coverage purchased . . . .").

In *Hermann Services, Inc. v. Resurgens Specialty Underwriting, Inc.*, the Honorable Freda L. Wolfson, U.S.D.J., interpreted a notice provision that read as follows:

> If, during the Policy Period or Discovery Period (if applicable), any Claim is first made, it shall be a condition precedent to the Insurer's obligation to pay, that the Insured give written notice of such Claim to the Insurer . . . *as soon as practicable after such Claim is first made, but earlier cancellation date of this policy.*

No. 08-1213, 2009 WL 2392910 at *5 n.1 (D.N.J. Aug. 3, 2009) (emphasis added). Another provision in the policy stated that "THIS IS A CLAIMS MADE AND REPORTED POLICY THAT APPLIES ONLY TO THOSE CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER DURING THE

14

POLICY PERIOD OR WITHIN THIRTY (30) DAYS THEREAFTER." *Id.* at *4. Judge Wolfson interpreted these provisions as "unequivocally requir[ing] [the insured party] to notify [the insurer] of any claims made during that policy period within thirty days of the policy's expiration." *Id.*

Here, the Notice Provision shares a similar construction as the notice provisions in *Gazis I* and *Hermann Services, Inc.* Specifically, the Notice Provision states that notice is to be given to Scottsdale "as soon as practicable, but in no event later than sixty (60) days after the expiration of the Policy Period." (Rapid Policy at SCP0013-14.) Pursuant to *Gazis II* and *Hermann Services, Inc.*, the Notice Provision requires Rapid to provide notice within sixty days of the expiration of the Rapid Policy. Scottsdale has not provided the Court with any precedent or facts suggesting that the Court should deviate from this persuasive authority.

Scottsdale's strained construction of the Notice Provision is revealed when the Notice Provision is compared to the notice provision in *Templo Fuente*. The notice provision in *Templo Fuente* included the phrase "as soon as practicable" followed by: (i) "and" operating as a conjunction, (ii) two enumerated options, and (iii) a final clause placing another restriction on when notice to the insurer must be provided. Here, the Notice Provision is not enumerated and does not contain a conjunctive "and" making clear that additional requirements follow the "as soon as practicable" requirement. While the Court does not find the Notice Provision is ambiguous, the Court notes that if Scottsdale wanted to treat the "as soon as practicable" portion of the Notice Provision as a distinct requirement of sufficient notice, Scottsdale could have employed clearer draftsmanship, like the insurer in *Templo Fuente*. *Progressive Cas. Ins. Co.*, 765 A.2d at 202.

The Court finds that the Notice Provision required Rapid to provide notice of the Underlying Action within sixty days of the expiration of the Rapid Policy. The Rapid Policy was canceled on March 14, 2011, and Rapid provided written notice of the Underlying Action on May

15

4, 2011—51 days later.[4] (Stip. SUMF ¶ 7.) Rapid's written notice to Scottsdale on May 4, 2011, accordingly, satisfied the Notice Provision.

### B. Endorsement No. 11 Bars JPMC's Claim

Having established that Rapid provided timely notice to Scottsdale, the Court must determine whether that notice triggered Scottsdale's obligation to provide Rapid coverage for the Underlying Action pursuant to the Insurance Clause. Scottsdale argues that Endorsement No. 11 bars coverage for the Underlying Action because the broad language of the provision bars any coverage for Claims related to Rapid. (*See* Scottsdale's Moving Br. 9-11.) JPMC responds by arguing that "it is well recognized that insurance contracts are contracts of adhesion, subject to interpretation against the insurer in order to accord with the reasonable expectations of the insured

---

[4] During her deposition, Palermo first testified that in September 2010 she called someone at Scottsdale and verbally notified Scottsdale of the Underlying Action (Palermo Dep. Tr. 236:14-237:20.) JPMC alleges that Rapid provided "verbal notice of the claim in September 2010 proximate to the date it was served with the Complaint." (JPMC SUMF ¶ 9.) Verbal notice, however, is insufficient because the Notice Provision required *written* notice. (*See* Rapid Policy at SCP0013-14 (stating that "[t]he **Insureds** shall, . . . give **Insurer** *written* notice of any claim as soon as practicable . . . .") (emphasis added).) Palermo also testified that in September 2010 she sent the complaint in the Underlying Action to Scottsdale. (*See* Palermo Dep. Tr. 237:17-239:18.) Later in her deposition, after reviewing several documents, Palermo testified that she believed that she provided Scottsdale notice in May 2011. (*Id.* at 254:8- 18.) JPMC, significantly, does not allege that Palermo provided *written* notice in September 2011. (*See* JPMC SUMF.)

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1359 (D.N.J. 1990), *aff'd*, 932 F.2d 960 (3d Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,323-34 (1986)). "Once a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing the need for trial." *Id.* (emphasis in original). JPMC has not proffered any specific facts in support of Palermo's testimony that she provided Scottsdale a copy of the complaint in September 2010. Indeed, JPMC's SUMF is carefully worded and limits the notice in September 2010 to verbal notice. (*See* JPMC SUMF ¶ 9.) JPMC's SUMF does not assert that Palermo provided written notice in September 2010, nor does JPMC argue whether written notice was provided in September 2010 is a material fact in dispute. JPMC, accordingly, has not met its burden of establishing that there is a material fact in dispute regarding whether Palermo provided written notice in September 2010.

regardless of whether an ambiguity exists." (JPMC's Opp'n Br. 2 (citing *Danek v. Hommer*, 100 A.2d 198 (1953)).) JPMC argues that Rapid's and Palermo's expectations were "inapposite" because Palermo expected that Coverage would be available to Rapid under the Rapid Policy despite Palermo requesting cancellation of the Rapid Policy as to Rapid. (*Id.*) JPMC insists that "Endorsement No. 11 came into being after the [Rapid Policy] was in effect for several months and after Rapid had provided verbal notice of the claim against it[,]" and "the only reasonable application of Endorsement No. 11" is for it to "exclude claims made after January 21, 2011, not prior claims made during Scottsdale's policy term." (*Id.* at 3.)

JPMC's arguments are unpersuasive and counter to current New Jersey precedent. "Exclusions in an insurance policy should be narrowly construed[,]" and "[t]he insurer has the burden of bringing the claim within the exclusion." *Colliers Lanard & Axilbund*, 458 F.3d at 236. "Nonetheless, 'exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Id.* (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997). "[I]t is a well-established principle that insurance contracts will not be enforced if they violate public policy . . . ." *Sparks*, 495 A.2d at 411 (citations omitted). New Jersey precedent allows "the reasonable expectations of the insured to override the plain meaning of a policy in exceptional circumstances." *Colliers Lanard & Axilbund*, 458 F.3d at 236-37. According to the Third Circuit's interpretation of this precedent, "the 'exceptional circumstances' that might allow a court to construe a clear and unambiguous policy exclusion in accordance with the objectively reasonable expectations of the insured, . . . arise only when a literal application of the exclusion would also violate public policy." *Id.* at 237.

The plain language of Endorsement No. 11 unequivocally excludes coverage for Rapid for the Underlying Action. This language is presumptively valid and should be given effect. There

17

is no reasonable argument that the language is not "specific, plain, clear, or prominent." Thus, the question is whether the application of Endorsement No. 11 would violate public policy. The New Jersey Supreme Court's guidance in *Templo Fuente* assists in resolving this inquiry.

The *Templo Fuente* court stated that "'courts have taken special consideration of the fact that the policy holders [of occurrence policies] were consumers unlikely to be conversant with all the fine print of their policies' and 'found that strict adherence to the terms of the notice provisions would result too harshly against [such insureds.]'" 129 A.3d at 1080 (quotations omitted). However, "[t]hose equitable concerns based on the nature of the parties do not control in [the] analysis of" a provision in a "claims made" policy "where the policyholders 'are particularly knowledgeable insureds, purchasing their insurance requirements through sophisticated brokers[.]'" *Id.* at 1080-81 (quoting Sol Kroll, *The Professional Liability Policy "Claims Made"*, 13 Forum 842, 843 (1978)). Thus, the *Templo Fuente* court "decline[d] plaintiffs' invitation to read the insurance policy at issue as a contract of adhesion, or 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Id.* (quoting *Chubb Custom Ins. Co.*, 948 A.2d at 1289).

Here, Palermo and Rapid were not unsophisticated consumers unaware of the requirements of the Rapid Policy. Instead, the record reflects that Palermo and Rapid were sophisticated parties utilizing a third party to secure insurance coverage. For example, Palermo worked with two other title insurance companies prior to forming Rapid, and she secured an insurance producer's license in order to conduct Rapid's business.[5] (*See* Palermo Dep. Tr. 43:1-48:10.) Additionally, Palermo and Rapid used IPA Risk Management as their insurance broker to secure the Rapid Policy and to

---

[5] The Court, of course, recognizes the difference between title insurance in the mortgage industry and professional liability insurance, like the Rapid Policy.

18

cancel it. (*Id.* at 221:15-227:7; 255:7-256:11.) Like the *Templo Fuente* court, the Court declines to read the Rapid Policy as a contract of adhesion or engage in a strained reading of Endorsement No. 11. Doing otherwise would result in the Court writing a better policy for Rapid than the one Rapid purchased. Simply put, Palermo requested a cancellation of coverage for Rapid as of a certain date and Palermo received exactly what she asked for, and it was embodied in Endorsement No. 11. New Jersey's "jurisprudence has never afforded a sophisticated insured the right to deviate from the clear terms of a 'claims made' policy." *Templo Fuente*, 129 A.3d at 1081. The Court, accordingly, finds that Endorsement No. 11 bars coverage for the Underlying Action. Scottsdale, therefore, had no duty to defend or provide coverage for Rapid in the Underlying Action. Thus, the Court also finds that JPMC's arguments in support of its motion for summary judgment, that Scottsdale breached the Rapid Policy by wrongfully denying coverage for the Underlying Action, are without merit.

## VI. **Conclusion**

For the reasons set forth above, the Court grants Scottsdale's Motion for Summary Judgment and denies JPMC's Motion for Summary Judgment. The Court will enter an order consistent with this Memorandum Opinion.

                                                     s/Michael A. Shipp
                                                   **MICHAEL A. SHIPP**
                                                   **UNITED STATES DISTRICT JUDGE**

**Dated:** February 27, 2019